UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| YVETTE BRAMLEY and <br> LISA A. LEWIS, <br>            Plaintiff <br> vs. <br> LIPPERT COMPONENTS, INC., <br>            Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) CASE NO.   3:23-cv-251 <br> ) <br> ) <br> ) <br> ) |

*COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF*
*AND REQUEST FOR TRIAL BY JURY*

Plaintiffs Yvette Bramley (hereinafter "Bramley") and Lisa Lewis (hereinafter "Lewis"), by their counsel and for their cause of action against Defendant Lippert Components, Inc. (hereinafter "Lippert"), state as follows:

*I.  FACTUAL ALLEGATIONS*

1. Bramley and Lewis both reside in Elkhart, Elkhart County, Indiana.

2. Lippert hired Bramley in approximately April 2017 to work at its manufacturing facility in Elkhart, Indiana. In her last position, Bramley worked for Lippert in its Awning Department. Lippert manufactures different components for recreational vehicles. Lippert wrongfully terminated Bramley's employment on June 23, 2022.

3. During her employment, Bramley performed excellent work for Lippert and met all of Lippert's reasonable expectations.

4. Lippert hired Lewis in mid-2021 to work at its manufacturing facility in Elkhart, Indiana. Lippert originally hired Lewis through a staffing or temporary employment agency

1

called DSS Holdings, LLC, before Lippert hired Lewis as a permanent employee. In her last position, Lewis worked for Lippert in its Awning Department. Lippert manufactures different components for recreational vehicles. Lippert wrongfully terminated Lewis's employment in January 2022.

5. During her employment, Lewis performed excellent work for Lippert and met all of Lippert's reasonable expectations.

### *Bramley Discrimination and Retaliation Facts*

6. Bramley is African American. In approximately May 2022, Lippert moved a Caucasian employee named Lisa Tharp to work with Bramley in Bramley's area. Very shortly afterward, Lisa Tharp became incredibly hostile and insulting to Bramley. She was quite profane and constantly said things like "fuck you, you bitch" to Bramley. Coworkers witnessed Tharp's hostile behaviors and comments to Bramley.

5. Bramley ultimately reported Lisa Tharp for her incredibly hostile and profane comments and behavior to Bramley's immediate supervisors. Bramley's supervisors relayed Bramley's complaints about Lisa Tharp to the Lippert primary supervisors.

6. Lippert, acting through its managers, called Lisa Tharp to the office, but the supervisors did nothing to fire Tharp or move Tharp to a work area away from Bramley. Instead, the supervisors decided to give both Tharp and Bramley the same write up and did nothing else. The primary managers in charge of this decision, Jeff Collins (the plant manager) and Rodney, are Caucasian.

7. Emboldened by the fact that Lippert managers did nothing of substance to punish her, Lisa Tharp became more profane and hostile toward Bramley, constantly calling Bramley a

"fucking bitch" in front of coworkers and threatening Bramley. Again, nothing was done to protect Bramley.

8. On Bramley's next to last day of work, Bramley was working in the Awning Department with Lisa Tharp. Tharp picked up a bundle of lighting materials and scratched herself. Immediately after this scratch, Tharp started screaming at Bramley, "you're going to get fucking fired, you fucking bitch." Tharp then went to Lippert supervisors and managers and falsely accused Bramley of causing this scratch.

9. Bramley's coworkers were present and could confirm that Lisa Tharp lied about the causation of this scratch and that Tharp again screamed profanities at Bramley and threatened her.

10. The next day, the manager believed to be named Jeff Collins approached Bramley and told her to come with him to the Human Resources office. Jeff told Bramley he would listen to Bramley's "side of the story." This was a lie. When Bramley entered the Lippert Human Resources Office, she was met by the Human Resources Manager named "Phoebe." Phoebe had a termination notice already-prepared for Bramley and told her she was fired. When Bramley asked Phoebe if she would listen to Bramley's side of the story or let Bramley provide coworker witnesses with whom Lippert managers could speak, Phoebe refused. Phoebe actually became very angry and slammed her hand down on a desk and yelled at Bramley that she was terminated. Jeff Collins then walked Bramley out of the plant.

11. Lisa Tharp was not fired and she was not disciplined as a result of her altercation with Bramley, her many earlier altercations with Bramley or Tharp's lie about this scratch.

12. Lippert has a recent history of discriminatory discipline and discriminatory

3

termination decisions that harm African American employees and favor Caucasian and Hispanic employees, particularly at the Lippert plant where Bramley worked.

### *Lewis Discrimination and Retaliation Facts*

13. Lewis is African American. In January 2022, a non-African American employee named "Shakira" (Shakira is believed to be Caucasian and Hispanic) used a racial slur and called Lewis a "stupid ni – er." Lewis and other coworkers heard Shakira's offensive racial slurs and Lewis reported Shakira's racial slurs against her to managers, including Plant Manager Jeff Collins. Lippert responded to the report of the racial slur by firing the African American employee, Lisa Lewis, but allowing the non-African American employee, Shakira, to keep her job.

14. Lewis initially reported Shakira for her racial slurs to Lewis's immediate supervisor. The immediate supervisor relayed Lewis's race harassment complaints about Shakira to the Lippert primary supervisors (the plant manager Jeff Collins and the human resources department).

15. Lippert, acting through its managers and human resources department, arranged a meeting that included Lewis and Shakira. The human resources manager in charge, believed to be named "Maria," spoke primarily with Shakira and spoke with Shakira primarily in Spanish. Lewis was not permitted to tell her story and, at one point, even asked what had been said in Spanish by Shakira.

16. Lippert did nothing to fire or punish Shakira, nor did it move Shakira to a work area away from Lewis. The primary manager in charge of this decision, Jeff Collins, is Caucasian. The human resources manager in charge of the interviews, "Maria," is Caucasian and

Hispanic.

17. After these meetings or interviews were completed, Lippert fired Lewis and did nothing to punish or fire Shakira. Lewis had done nothing wrong and had not violated any Lippert rule to justify termination. Lewis had only reported her coworker for calling her an incredibly offensive and charged racial slur.

18. Bramley and Lewis are specifically alleging that they are victims of racial discrimination and retaliation based upon disparate discipline. See *Coleman v. Donahoe*, 667 F.3d 835, 850–51 (7th Cir. 2012). Bramley was fired under the same or lesser circumstances than Lisa Tharp. Tharp was treated far more favorably in discipline decisions, termination decisions and even in investigation of complaints than Bramley because Tharp is Caucasian and Bramley is African American. In the same way, Lewis was fired under the same or lesser circumstances than Shakira, who is Caucasian and Hispanic, and who was treated far more favorably in discipline decisions, termination decisions and even in investigation of complaints than Lewis because Shakira is Caucasian/Hispanic and Lewis is African American.

19. In a disparate discipline case, the similarly-situated inquiry often hinges on whether co-workers "engaged in comparable rule or policy violations" and received more lenient discipline. *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir.2010). The Supreme Court has made clear that "precise equivalence in culpability between employees is not the ultimate question: as we indicated in *McDonnell Douglas*, an allegation that other 'employees involved in acts against [the employer] of comparable seriousness ' ." *Coleman v. Donahoe*, 667 F.3d at 850. Following this language, our circuit, like many others, has adopted this "comparable seriousness" standard. *Id.*; *Davis v. Wisconsin Dep't of Corrections*, 445 F.3d 971, 978 (7th

5

Cir.2006); *Johnson v. Artim Transportation System, Inc*., 826 F.2d 538, 543 (7th Cir.1987). Again, Bramley is specifically alleging that she was fired under circumstances in which her Caucasian comparator, Lisa Tharp, was not, but should have been. Similarly, Lewis is specifically alleging that she was fired under circumstances in which her Caucasian/Hispanic comparator, Shakira, was not, but should have been. Comparators must have "engaged in similar—not identical—conduct to qualify as similarly situated." *Coleman v. Donahoe*, 667 F.3d at 850.

20. Lippert's Caucasian managers have a history of disparate discipline and race-based lawsuits stemming from disparate discipline and retaliation.

21. Lippert has a history of disciplining African American employees more harshly. There exists other, recent litigation in the Northern District of Indiana asserting racial discrimination and disparate discipline against Lippert.

22. Finally, Bramley also believes she was treated less favorably than her Caucasian coworkers in wage increases in approximately April 2022. She earned a raise from $20.00 per hour to $21.00 per hour, but was not given the raise and her complaints about this discrimination fell upon her manager's deaf ears.

23. Yvette Bramley and Lisa Lewis are the victims of race discrimination and retaliation. They were fired for reasons their similarly situated Caucasian workers were not. Both were fired very shortly after making formal race discrimination complaints to Lippert about Caucasian coworkers.

24. Bramley is bringing claims of race discrimination and retaliation against Lippert under Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866. See 42 USC §

1981. Ms. Bramley was discriminated against because of her race, African American, and retaliated against when she complained about race discrimination. She was disciplined and terminated for reasons her similarly situated Caucasian coworkers were not being disciplined, particularly Lisa Tharp.

25. Lewis is bringing claims of race discrimination and retaliation against Lippert under the Civil Rights Act of 1866. See 42 USC § 1981.[1] Ms. Lewis was discriminated against because of her race, African American, and retaliated against when she complained about race discrimination. She was disciplined and terminated for reasons her similarly situated Caucasian coworkers were not being disciplined.

26. Bramley and Lewis are both seeking all available damages, including all lost wages and benefits, equitable relief, all available compensatory damages, and all punitive damages. Both are seeking payment of all of their reasonable attorney's fees, costs and expenses.

27. Additionally, as a term and condition of her employment with Lippert, Bramley earned vacation pay. On the date of her termination, Bramley had earned and was owed wages for at least 55.0 hours (at least $1,100.00) or more. Bramley was not terminated for any good cause and she has still not been paid any unused vacation pay from the time her employment was terminated in late June 2022.

28. Despite this negotiated term of employment compensation, Lippert has failed and continues to fail to pay Bramley her accrued vacation pay. Lippert's failure to pay Bramley her

---

[1] Lewis did not file a Charge of Discrimination raising Title VII race discrimination and retaliation claims with the Equal Employment Opportunity Commission within 300 days of her termination, but is raising her claims under 42 USC § 1981 well within four (4) years of their occurrence.

accrued vacation wages has been an act of bad faith. Lippert's failure to pay Bramley her earned vacation pay has certainly not been an act of "good faith," as would be required under I.C. 22-2-5-2. With liquidated damages under I.C. 22-2-5-2, Lippert owes Bramley damages of at least $3,300.00 plus payment of Bramley's attorney's fees and costs.

29. By way of this Complaint, Bramley and Lewis seek to vindicate their rights and the rights of other African American employees to fair and equal opportunity in employment.

## II. JURISDICTION AND VENUE

30. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 42 U.S.C § 2000e et seq, and 42 U.S.C. § 1981, as Plaintiffs' Complaint raises federal questions of law. This Court has supplemental jurisdiction over Bramley's state law wage claims under the Indiana Wage Claims Statute, as those claims arise under a set of facts common to her federal claims and common to her employment with Lippert.

31. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the unlawful conduct alleged herein was and is now being committed in the Northern District of Indiana.

## III. PARTIES

32. At the time of her employment and her discharge from employment, Bramley was domiciled in and resided in Elkhart, Indiana. Similarly, at the time of her employment and her discharge from employment, Lewis was domiciled in and resided in Elkhart, Indiana.

33. Lippert employed Bramley and Lewis to work for it at its Elkhart, Indiana facility.

## IV. ADMINISTRATIVE COMPLIANCE

34. Bramley has complied with all of the administrative procedures that are conditions

precedent to the filing of this lawsuit. Bramley received her Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission. That Notice of Right to Sue is dated January 24, 2023.

35. Bramley has further complied with all of the administrative procedures that are conditions precedent to the filing of this wage and hour lawsuit. With respect to her claims under the Indiana Wage Claims Statute, I.C. 22-2-9, because Bramley was involuntarily terminated from employment by Lippert, Bramley's wage claim to recover unpaid wages arises under the Indiana Wage Claims Statute, I.C. 22-2-9. Bramley obtained a letter from the Indiana Attorney General's Office dated August 4, 2022, which permits her attorney to file this wage claim on Bramley's behalf as the Indiana Attorney General's "designee."

## V. STATEMENT OF CLAIMS

### A. BRAMLEY AND LEWIS'S RACE DISCRIMINATION CLAIMS UNDER 42 U.S.C. § 1981

36. Bramley and Lewis allege and incorporate herein by reference paragraphs 1 through 35 above.

37. Bramley had an employment relationship with Lippert, thereby creating a relationship that is contractual in nature between Bramley and Lippert. Lewis had an employment relationship with Lippert, thereby creating a relationship that is contractual in nature between Lewis and Lippert.

38. Lippert's discriminatory and retaliatory actions have violated both Bramley and Lewis's rights which are protected by the Civil Rights Act of 1866, 42 U.S.C. § 1981.

39. Specifically, both Bramley and Lewis were treated in a disparate manner in the

terms, conditions and privileges of employment as compared to other similarly situated Caucasian co-workers. Bramley was discriminatorily denied pay increases, was harassed and subjected to a racially hostile work environment, was retaliated against and was ultimately subjected to severely disparate discipline and discriminatorily fired by Lippert. Similarly, Lewis was harassed and subjected to a racially hostile work environment, was retaliated against and was ultimately subjected to severely disparate discipline and discriminatorily fired by Lippert.

40. As a direct and proximate result of Lippert's discriminatory and retaliatory practices, Bramley and Lewis have found it necessary to retain the services of an attorney and they are therefore entitled to their reasonable attorney's fees, costs and expenses in this matter.

41. By way of this Complaint, Bramley and Lewis specifically allege that Lippert intentionally and/or with reckless disregard, discriminated against them in the terms, conditions and privileges of their employment on the basis of their race, African American. As a direct result of this discrimination, Bramley and Lewis have suffered substantial damages.

42. Bramley and Lewis are both seeking from Lippert all available damages under 42 U.S.C. § 1981, including all available back pay and benefits, front pay and benefits, all available compensatory damages, punitive damages, attorney's fees, expenses and costs, plus any and all other equitable relief.

### B. BRAMLEY'S RACE DISCRIMINATION CLAIMS UNDER TITLE VII

43. Bramley alleges and incorporates herein by reference paragraphs 1 through 42 above.

44. Lippert's discriminatory and retaliatory actions have violated Bramley's rights which are protected by Title VII of the Civil Rights Act of 1964.

45. Specifically, Bramley was treated in a disparate manner in the terms, conditions and privileges of her employment as compared to other similarly situated Caucasian co-workers. Bramley was discriminatorily denied pay increases, was harassed and subjected to a racially hostile work environment, was retaliated against and was ultimately subjected to severely disparate discipline and discriminatorily fired by Lippert.

46. As a direct and proximate result of Lippert's discriminatory and retaliatory practices, Bramley has found it necessary to retain the services of an attorney and is therefore entitled to her reasonable attorney's fees, costs and expenses in this matter.

47. By way of this Complaint, Bramley specifically alleges that Lippert intentionally and/or with reckless disregard, discriminated against her in the terms, conditions and privileges of her employment on the basis of her race.  As a direct result of this discrimination, Bramley has suffered substantial damages.

48. Bramley is seeking from Lippert all available damages under Title VII, including all available back pay and benefits, front pay and benefits, all available compensatory damages, punitive damages, her attorney's fees, expenses and costs, plus any and all other equitable relief.

### C.  BRAMLEY'S CLAIM FOR VIOLATION OF THE INDIANA WAGE CLAIMS STATUTE

49. Bramley hereby incorporates by reference the material allegations stated in rhetorical paragraphs 1 through 48 of the Complaint for Damages as set forth herein.

50. As described above, Lippert  breached its obligation to pay wages (including all vacation wages) to Bramley.

51. Lippert's failure to pay Bramley her wages 1) on time and 2) in full were acts of

11

bad faith. Bramley is certainly entitled to payment of all of her earned wages, liquidated damages for the late paid wages, and liquidated damages for the unpaid wages. Because she was involuntarily terminated from employment, Bramley's right to damages arises under I.C. 22-2-9-4(b), which incorporates the damages provisions of I.C. 22-2-5-2.

52. By way of this Complaint, Bramley is seeking all available damages, including all unpaid wages, including all earned, accrued vacation wages. Bramley is owed an additional amount equal to two (2) times her unpaid wages, plus any and all attorney's fees, costs, and expenses, and any other damage which she may be entitled pursuant to Indiana Law.

### *PRAYER FOR RELIEF*

WHEREFORE, Plaintiffs Yvette Bramley and Lisa Lewis request the following relief:

1. That the Court issue a declaratory judgment deeming the actions of Lippert to be a violation of Plaintiffs' rights under the Civil Rights Act of 1866 and Bramley's rights under Title VII of the Civil Rights Act of 1964;

2. That the Court enjoin and restrain Lippert and all other persons acting on its behalf from engaging in such unlawful and discriminatory practices as set forth in this Complaint;

3. That the Court enter judgment in favor of Bramley and Lewis and against Lippert for all lost wages and benefits, including back pay and front pay, that the Court determines Bramley and Lewis lost as a result of Lippert's unlawful conduct, together with all available pre-judgment interest;

4. That the Court enter judgment in favor of Bramley and Lewis and against Lippert for all available compensatory damages, including, but not limited to, damages for pecuniary

losses, damages for humiliation, career disadvantage, loss of enjoyment of life, mental and emotional stress and anguish, and future lost earnings, all together with pre-judgment interest. Further, that the Court award Bramley and Lewis punitive damages against Lippert;

5. That the Court award to Bramley and Lewis their reasonable attorneys fees, costs and expenses;

6. That the Court award to Bramley for her Indiana Wage Claims Statute claim all unpaid wages, including all unpaid vacation wages, liquidated damages, payment of her attorney's fees and costs; and

7. That the Court award any and all such other and further equitable relief as may be appropriate to fully redress the deprivation of Bramley and Lewis's rights, to prevent their reoccurrence in the future and to protect other Lippert employees from such unlawful behavior.

HASSLER KONDRAS MILLER LLP
100 Cherry St.
Terre Haute, Indiana 47807
(812) 232-9691

By /s/Robert P. Kondras, Jr.
   Robert P. Kondras, Jr.
   Attorney No. 18038-84
   Attorney for Plaintiff
   kondras@hkmlawfirm.com

### *REQUEST FOR TRIAL BY JURY*

Come now Plaintiffs Yvette Bramley and Lisa Lewis, by their counsel, and hereby request a trial by jury, on all issues which may be tried to a jury.

HASSLER KONDRAS MILLER LLP

        100 Cherry St.
        Terre Haute, Indiana 47807
        (812) 232-9691


By /s/Robert P. Kondras, Jr.
   Robert P. Kondras, Jr.